UNITED STATES *v.* BAKER CASTOR OIL Co. (No. 456).[1]

1. TARE, GENERALLY.

Impurities ordinarily present in an article of merchandise do not constitute tare; only those impurities not ordinarily present in the merchandise as traded in may be the subject of an allowance for tare.—Seeberger *v.* Wright (157 U. S., 183); Shallus *v.* United States (1 Ct. Cust. Appls., 316: T. D. 31408).

2. TARE IN CASTOR SEEDS.

Without passing on the relevancy, as testimony here, of a certificate showing the results of an analysis made at the place of export, this certificate may be taken as in the nature of an admission against interest, and since it is made apparent that no allowance is commonly made as between seller and buyer of castor seeds, except in cases where the impurities exceed 3 per cent, and then only for the excess over and above 3 per cent, the allowance here should have been, not for 5, but for the excess above 3 per cent, namely, 2 per cent.

United States Court of Customs Appeals, November 28, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7088 (T. D. 30878).

[Modified and affirmed.]

*Wm. L. Wemple,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

*Curie, Smith & Maxwell* (*W. Wickham Smith* of counsel) for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case is an importation of castor seeds or beans. Duty was assessed at the rate of 25 per cent per bushel of 50 pounds under paragraph 266 of the tariff act of 1909. The importers claimed an allowance for dirt, gravel, and other foreign substances, amounting to 4.99 per cent, and filed a protest with the Board of General Appraisers, which protest was sustained. The Government brings the case here by appeal.

The board found as a fact that there was present about 5 per cent of dirt, gravel, etc., and directed a reliquidation accordingly, relying for authority on the case of Seeberger *v.* Wright (157 U. S., 183), and the case turns upon the effect to be given to this decision.

It was said in the opinion of the board that this case has been criticized to some extent by inferior tribunals, but has never been overruled. It is true that the case has been distinguished in numerous other cases by inferior tribunals, and it is also true that it has never been overruled.

It is therefore essential to determine just what that case decided. This is to be determined by ascertaining the question presented to the court. The case was tried under a stipulation and among the facts found by the court was this: The invoices show the gross weight and tare of 5 pounds per bag and a deduction of 4 per cent for impurities. The collector, in assessing the duties, deducted the tare, which was the weight of the bags, but refused to allow anything for impuri-

---

ties, assessing a duty of 20 cents per bushel of 50 pounds upon the gross weight, less the tare.

It would appear, therefore, that in the case cited, at least as to the importation there considered, there was an allowance made by the seller for the impurities. There was nothing in the record of that case to show that this was an unusual allowance. As was said by the Court of Appeals in United States *v.* Reid, Murdoch & Co. (120 Fed. Rep., 242), involving imported currants, and in holding that the decision in Seeberger *v.* Wright was not controlling:

In that case (Seeberger *v.* Wright) * * * it was admitted or proven that it contained 4 per cent of impurities, while there was no proof that the imported article, according to the customs of the trade, contained any such impurity.

So, in dealing with the subject of shelled nuts, the court in Spencer & Co. *v.* United States (143 Fed. Rep., 916), referring to Seeberger *v.* Wright, and United States *v.* Reid, Murdoch & Co., said:

Both cases make it plain that the important thing is to find out what the shelled nuts of commerce were when paragraphs 269 and 270 were enacted. These impurities are said to have appeared in the nuts since then. If this were so, and if the percentage of impurities has been clearly shown, there would be great force in the contention—

and it was held that no allowance should be made for impurities in an importation when there was nothing to show "abnormal quantities of foreign matter" in the importation, or where the merchandise did not vary from the "ordinary wholesale condition." This case was, on appeal to the Circuit Court of Appeals for the Second Circuit, affirmed on the opinion by the district judge.

The case of Seeberger *v.* Wright was considered by this court in the case of Shallus *v.* United States (1 Ct. Cust. Appls., 316; T. D. 31408), and it was said:

The principle as to when tare is allowable is stated in effect that tare should be allowed only in such cases where its presence was uncommon to the condition of the merchandise as ordinarily dealt in in trade and commerce. In other words, the ordinary impurities of merchandise do not constitute tare, but the extraordinary impurities, such as are uncommonly present in the merchandise as bought and sold in trade and commerce, are alone the subject of allowance for dutiable purposes.

We think this is a correct interpretation of the Seeberger case.

The importers introduced as a part of their case a certificate made by the Incorporated Oil Seed Association, of London, England, which is claimed to be a report of the analysis of the seed in question, showing clean castor seed, 95.01 per cent; nonoleaginous, 4.99 per cent; fixed allowance, 3 per cent; and to be deducted from invoice, 1.99 per cent, totaling 100 per cent; "say, allowance to buyer, 1.99 per cent."

Government's counsel objected to the introduction of this testimony as hearsay. It was, however, admitted as a part of the *res gestæ.* The objection urged by Government's counsel has much force, and it is very doubtful whether the board did not extend the rule of *res gestæ* to facts which as affecting the present issue con-

stituted a past transaction.    But as the importer proved the presence of these impurities by other testimony, we do not deem it important to decide this question.    In any view, the testimony offered may properly be used to illustrate and limit the testimony of the importer's witnesses, in so far as it militates against their claim, as in the nature of an admission against interest.

The attention of the importer's witness was called to this statement, and the following occurred:

Q. I also find on the right-hand side opposite, "Fixed allowance, 3 per cent." What does that mean?—A. That is the basis on which that seed is bought.

Q. Does that mean that it is bought with a margin of 3 per cent for dirt?—A. Some bought with a margin of 3 per cent, some with a margin of 1 per cent——

Q. I mean as to this particular transaction?—A. Three per cent.

Q. That means there was an allowance of 3 per cent?—A. The difference between 3 per cent and 4.99 per cent.

This is the only testimony showing what the castor seeds of commerce are, and from this it is plainly to be inferred that no allowance is made as between seller and buyer except in cases where the non-oleaginous substance exceeds 3 per cent, and then only for the excess above 3 per cent.

Applying that rule to the present case by accepting the finding of the Board of General Appraisers as to the quantity of impurities contained in the seed under consideration as 5 per cent, the allowance to the importer should have been for 2 per cent only, and the decision of the Board of General Appraisers is modified accordingly.