VITELLI & SON *v.* UNITED STATES (No. 766).[1]

No Tare Allowance for Tops of Garlic.

    Garlic consists of the bulb and top of the plant. No portion of the natural product as imported can properly be called tare, and particularly is this true since it is shown by the evidence that the tops serve the purpose of preserving the bulbs and are sold as constituting a part of the importation.—Shallus *v.* United States (1 Ct. Cust. Appls., 316; T. D. 31408); United States *v.* Baker Castor Oil Co. (2 Ct. Cust. Appls., 338; T. D. 32076).

    United States Court of Customs Appeals, April 17, 1912.

Appeal from Board of United States General Appraisers, G. A. 7266 (T. D. 31831).

    [Affirmed.]

    *W. Wickham Smith* and *John K. Maxwell* (*Thomas M. Lane* of counsel) for appellants. *William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, on the brief), for the United States.

    Before Montgomery, Smith, Barber, De Vries, and Martin, Judges.

Montgomery, Presiding Judge, delivered the opinion of the court:

The appellants are importers of garlic, which comes into the country with the tops remaining, braided together in strings by means of the stalk. It is claimed by the importers that this straw or stalk used to tie the garlic together is allowable as tare. There is

---

[1] Reported in T. D. 32460 (22 Treas. Dec., 732).

some testimony that in case the stalk is insufficient for the purpose additional straw or stalk removed from other garlic is added, but the general practice is to take the garlic as it is harvested and use the top or stalk to braid the same into strings, and these strings are packed in the box or barrel for shipment.

The finding of the Board of General Appraisers was as follows:

According to the testimony and the samples produced in court, the commodity is imported braided in strands or strings by means of the tops. Sometimes, however, they are imported, it appears from the testimony, in bunches tied together by the tops, and perhaps in some instances imported loose, but always with the tops attached. Whether this is for the express and only purpose of packing and protection in shipment, or whether the condition of the garlic is such that it improves by allowing the top to remain on the bulb, does not appear. It might very reasonably, we think, be for the latter purpose. At all events, if there is no reason for allowing the tops to remain except for the convenience of handling, it is entirely within the discretion of the importers to remove them before importation, in which event, of course, duty would be assessed only upon the garlic bulb or bottom. If the weight of the top is to be deducted, there is no reason why the weight of the dead husk, and even the root, should not be allowed for, because they are equally worthless for any practical purpose for which garlic is used.

This finding is fully as favorable to the importers as the testimony would warrant. The suggestion is made that garlic is sometimes imported with the tops removed. There is no testimony which shows with any clearness any instances of such importations. On the contrary, F. Vitelli, one of the importers, testified, in answer to a question by General Appraiser Hay:

Does garlic come from any other place loose—in any other way than in these strings?—A. Yes; comes in other ways—in cases in bunches; the stems are bunched.

Q. It always has the stems on it when it comes in?—A. Yes, sir.

Q. Whether tied up in bunches or what, it has the stems on it?—A. Yes, sir.

By Judge WAITE: Is that the only way you know of them coming in, in bunches or in strings like these here. Are those the only two ways you know?—A. Yes; those two ways.

It is true there is testimony of a witness that he handles loose garlic, but it does not appear that this garlic has the tops removed. There is, therefore, ample testimony to support the finding of the board upon this point.

As to whether the top remaining on the bulb serves any other purpose than that of aiding in the packing, we think the testimony is very persuasive that it has such purpose. The witness, F. Vitelli, testified:

A. The purpose is to convenient handling it, packing and keeping the garlic.

Q. Why is it more convenient to handle it in that way than if these separate pieces of garlic that appear on this illustrative Exhibit B were cut off and separated?—A. First of all, because they pack better in this way; pack better in the hampers.

Q. Why do they pack better?—A. Because they are put in order, the straw and top.

Q. Does not the stem take up a good deal of room in the hamper?—A. It does; yes.

Q. Then why do you say it is better?—A. It keeps better.

Q. When you say keeps better, is not that because it is better for the garlic not to be removed from the main stem—does not the garlic keep fresh better as long as it is attached to the stem?—A. It does; keeps just the same.

Q. That is one of the main reasons in using it.—A. The main purpose is also in packing and handling it. The consumers in most cases get a string at a time and hang it up.

Q. Then do I understand you sell it to the consumers in this way, with the stems, etc., attached?—A. Yes; everything.

By Judge WAITE: Why don't they cut them off and ship them that way as they do onions?—A. Well, as I say, they are used to the garlic this way, and also for the purpose of keeping them better through the voyage, keeping them better all the while for consuming.

This testimony tends strongly to show that the retention of the stalk upon the garlic has a very decided purpose other than mere convenience in packing and handling, and that the article of commerce is the garlic with the stalk attached.

We think the board reached the correct conclusion as to the law of the case. The paragraph in question, 261 of the tariff act of 1909, imposes a duty on garlic of 1 cent per pound. Garlic consists of the bulb and the top. This natural product is imported, and can not, as to any portion of it, be properly called tare, particularly as it is shown that the top serves the purpose of preserving the bulb and is sold as a part of the importation.

In two recent cases this court has dealt with the subject of tare. In Shallus *v.* United States (1 Ct. Cust. Appls., 316; T. D. 31408) the court said, speaking through De Vries, Judge:

The principle as to when tare is allowable is stated, in effect, that tare should be allowed only in such cases where its presence was uncommon to the condition of the merchandise as ordinarily dealt in in trade and commerce. In other words, the ordinary impurities of merchandise do not constitute tare, but the extraordinary impurities, such as are uncommonly present in the merchandise as bought and sold in trade and commerce, are alone the subject of allowance for dutiable purposes.

The question was again before the court in the case of United States *v.* Baker Castor Oil Co. (2 Ct. Cust. Appls., 338; T. D. 32076), in which the above quotation was said to be a correct interpretation of the case of Seeberger *v.* Wright & Lawther Oil & Lead Manufacturing Co. (157 U. S., 183), and it was held that the impurities which were usually found in the castor seed of commerce were not subject to allowance for tare, but that unusual and excessive impurities might be allowed. See also United States *v.* Reid, Murdoch & Co. (120 Fed. Rep., 242) and Spencer *v.* United States (143 Fed. Rep., 916). It is possible that not all cases decided by the board can be reconciled by this rule, but many of them undoubtedly can.

For instance, the case holding that naphthalin in wool may be allowed as tare was a case where a foreign substance was placed in bales of wool as a disinfectant. It was not wool and should not have paid duty as if it were wool (T. D. 32068). So wrappings of silk fabric, referred to in United States *v.* Gage (1 Ct. Cust. Appls., 439; T. D. 31503), where it was indicated that the proper method of weighing silk fabric was to ascertain the weight stripped—that is, with the strings, coverings, pins, tags, braids, bales, and other

incidents of packing removed—were held to be tare, as it was a clear case where the article imported was still left dutiable.

Bands of sisal grass used to tie up bales of sisal grass, such ropes or bands being of inferior grass, and so strained and tangled in making and tying the ropes that it became worthless as sisal grass, were held by the department to be subject to allowance as tare (T. D. 5847). This case is distinguishable from the present in that the sisal grass thus imported has served its purpose when imported, and serves only such purpose as might have been served by any other string or cord which retains the bale in shape.

We express no opinion as to whether allowance made for the weight of pods of castor beans is consistent with the rule which we have laid down.

We think that, following the rule of Seeberger v. Wright and the two cases in this court in which it has been construed—Shallus v. United States, *supra*, and United States v. Baker Castor Oil Co., *supra*, as well as the authority of the other cases hereinbefore cited— the Board of General Appraisers reached the correct conclusion, and their decision is *affirmed*.