## ROSENSTEIN BROS. *v.* UNITED STATES (No. 1189).[1]

LIQUID IN TINS WHEN NOT TARE.

The liquid in these tins was not added, but is an oil exuding from the fish in the processes of canning, this oil taking into solution the inclosed salt, forming thus a brine. There is no case here for an allowance on account of impurities or for tare.— Shallus *v.* U. S. (1 Ct. Cust. Appls., 316; T. D. 31408).

### United States Court of Customs Appeals, October 24, 1913.

APPEAL from Board of United States General Appraisers, Abstract 32339 (T. D. 33409).

[Affirmed.]

*McLaughlin, Russell, Coe & Sprague (Edward P. Sharretts* of counsel) for appellants.
*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal concerns an importation of kippered herring, imported in mechanically and hermetically sealed tins. No question is raised as to the appropriate rate of duty. The controversy concerns the proper weight of the fish in that duty is levied thereupon at the rate of one-half of 1 cent per pound. The appellant claims that the liquid in each can weighs 2 or 3 ounces, and it seems to have been admitted upon the part of the Government that it will weigh 2 ounces per tin. It may be taken as conceded facts in the record that the return for dutiable purposes of 1 pound per tin includes the fish and liquid which surrounds it, and that the weight of the liquid is at least 2 ounces per tin. Appellant maintains that the weight of the liquid should be deducted in the assessment of duty.

The character of the liquid is undisputably disclosed by the record. The president of the importing company, Mr. Adolph Goldmark, being sworn and interrogated, answered as follows:

By Mr. ROBERTSON. This liquid is put in by the people who pack the fish?—A It is put in with the fish itself, * * *.

*       *       *       *       *       *

By General Appraiser HAY. You answered to Mr. Robertson's question that the liquid was put in with the fish. It is not put in in the form of a liquid at all, is it?—A. No; it is the wet fish that goes in.

---

[1] Reported in T. D. 33840 (25 Treas. Dec., 367).

21500—VOL 4—14——26

Q. Of course, the fish, like every other fish, is more or less damp, and they put salt in?—A. Yes.

Q. To preserve the fish?—A. They don't put it into the can; it is put on in curing the fish.

Q. Before the fish are put into the can they are salted?—A. Yes.

Q. Then that becomes liquid itself—it liquifies—and the oil comes from the fish. The liquid you find there is from all those sources—the dampness of the fish, the liquifying of the salt, and the oil that comes from the fish. It does not go in in the form of a liquid in the packed can?—A. No, sir.

Mr. Ralph W. Goldman, being called also upon behalf of the importer, fully corroborated the testimony of Mr. Goldmark.

A fair epitome of the testimony, therefore, is that the liquid within the tins is not an added liquid, but an oil which, under the process and pressure of canning, exudes from the fish and takes into solution the salt, forming a brine. Inasmuch as the only water added is that which incidentally wets the fish after washing, it must be apparent that the quantity of such within the tins is purely negligible, and that the liquid consists essentially of the oil which has exuded from the fish and takes up the salt in solution.

We do not think this comes within the principles of any of the decisions making allowance for impurities or tare. The principle controlling such cases was laid down by this court in Shallus v. United States (1 Ct. Cust. Appls., 316, 318; T. D. 31408), as follows:

The principle as to when tare is allowable is stated in effect that tare should be allowed only in such cases where its presence was uncommon to the condition of the merchandise as ordinarily dealt in in trade and commerce. In other words, the ordinary impurities of merchandise do not constitute tare, but the extraordinary impurities, such as are uncommonly present in the merchandise as bought and sold in trade and commerce, are alone the subject of allowance for dutiable purposes.

The court subsequently, in United States v. Baker Castor Oil Co. (2 Ct. Cust. Appls., 338; T. D. 32076) and in Vitelli & Son v. United States (3 Ct. Cust. Appls., 171; T. D. 32460), quoted this principle of decision with approval.

The Vitelli case, opinion written by the presiding judge, seems particularly applicable to this case. The question there was whether certain stalks upon the garlic were to be included within the weight of the garlic for dutiable purposes. The court said:

This testimony tends strongly to show that the retention of the stalk upon the garlic has a very decided purpose other than mere convenience in packing and handling, and that the article of commerce is the garlic with the stalk attached

We think the board reached the correct conclusion as to the law of the case. The paragraph in question, 261 of the tariff act of 1909, imposes a duty of 1 cent per pound. Garlic consists of the bulb and the top. This natural product is imported, and can not, as to any portion of it, be properly called tare, particularly as it is shown that the top serves the purpose of preserving the bulb and is sold as a part of the importation.

The case here at issue differs from a line of decisions promulgated by the Board of General Appraisers, such as in G. A. 5717 (T. D. 25409), wherein an allowance was made for quantities of brine added to fish in barrels as a preservative more or less in quantity sufficient.

to cover the fish. In that case the foreign material was added. This content is in effect a part of the fish. If allowance were sustained for the oil expressed from the fish, upon the ground claimed by appellant that it was useless and thrown away, we might well expect this case to be followed by claims for the heads, tails, fins, and bones of the fish, which likewise are not used and are thrown away.

Of necessity all such nonedible parts enter into the weight and value of the fish as bought and sold and are a part of the fish itself.

We agree with the board "that we should not grant the demand for liquid usually found in the commodity and which has been produced entirely from the commodity itself after being packed." Such seems to have been the course of decisions of the board, as in G. A. 6276 (T. D. 27058), relating to a claim for allowance for a liquid in which fruit was preserved, and in G. A. 5307 (T. D. 24320).

The decision of the Board of General Appraisers is *affirmed.*