NEWPORT CO. *v.* UNITED STATES (No. 2250).[1]

WEIGHT OF SILVER SALT—WATER AS TARE.

Anthraquinone sulphoacid, a coal-tar product known commercially as "silver salt," imported mixed with about 1½ times its own weight of water, the mixture being mechanical and not chemical and the water being present as a necessary incident in the manufacture, used, after removing the water, in making dye, should have been assessed under section 501, act of September 8, 1916 (39 Stats. 756), according to the weight of the silver salt and not that of the water also.

United States Court of Customs Appeals, February 16, 1924.

APPEAL from Board of United States General Appraisers, Abstract 45608.

[Reversed.]

*Charles F. Fawsett* and *Charles E. Monroe* for appellant.
*William W. Hoppin,* Assistant Attorney General (*Harry M. Farrell,* special attorney, of counsel), for the United States.

[Oral argument December 12, 1923, by Mr. Monroe and Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges; HATFIELD, Associate Judge, participating in the decision by agreement of counsel.

SMITH, Judge, delivered the opinion of the court:

Sulphoacid of anthraquinone, a coal-tar product, commonly known as silver salts, imported at the port of Milwaukee, Wis., was assessed with a duty of 15 per cent ad valorem and an additional duty of 2½ cents per pound under sections 500 and 501 of the act of September 8, 1916, which in so far as pertinent, read as follows:

SEC. 500, Group II. Amidonaphthol, amidophenol * * * anthraquinone * * * or any sulphoacid or sulphoacid salt of any of the foregoing * * * 15 per centum ad valorem.

---

[1] T. D. 40036.

SEC. 501. That on and after the day following the passage of this act, in addition to the duties provided in section 500, there shall be levied, collected, and paid upon all articles contained in Group II, a special duty of 2½ cents per pound.

The total weight of the importation was 396,150 pounds, of which quantity 163,982 pounds was sulphoacid of anthraquinone and 232,168 pounds was water.

The importer protested that the additional duty of 2½ cents per pound should have been assessed on the dry weight of the salt and not on the salt and nearly 60 per cent of water.

The collector forwarded importer's protest and the papers in the case to the Board of General Appraisers, together with the following report:

This so-called silver salt is a coal-tar product which is imported in paste form in casks. Before it can be used it must be dried. The liquidated duty, as far as the weight is concerned, is figured on a basis of the weight of the merchandise in its imported form in accordance with provisions of Art. 617, Customs Regulations 1915. The invoices attached show both dry weight and wet weight, entry being made on a basis of the dry weight, which does not represent the actual weight as imported.

The Board of General Appraisers overruled the protest and the importer appealed.

The Government contends that the specific duty of 2½ cents per pound was properly assessed on the weight of the importation as it came into the country, that is to say, on the weight of the salts and the weight of the water with which the salts were mixed. We can not admit that that contention is sound.

Silver salt according to the authorities and the uncontradicted testimony is a pure monosulphate of sodic anthraquinone. The heating of anthraquinone in sulphuric acid develops a composite mass which consists of a little disulphonic acid, some unchanged anthraquinone and a large percentage of monosulphonic acid. By diluting that mass with water the unchanged anthraquinone separates out and is filtered off leaving the monosulphonic acid and the disulphonic acid in solution. The solution is then treated with common salt or some other salt and the monosulphate of sodic anthraquinone or silver salt is precipitated in the form of crystals which are filtered out of the solution as a paste.—Thorpe's Dictionary of Chemistry (Vol. I) pages 49 and 50.

The evidence is clear and unmistakable that silver salts are not soluble in water and that the crystals are merely mechanically mixed with the water or suspended in it, but not dissolved. Water is not a constituent part of the silver salt or natural to it and must be removed completely before the commodity can be employed in the manufacture of fast dyes, the purpose for which such importations are used. That the product must be thoroughly dried before using is due to the fact that in the making of dyes the salts must be subjected

to the action of ammonia having the highest possible concentration, and the presence of water in the salts would affect the strength of the ammonia, thereby precluding a uniform result. Indeed, water is so detrimental to the use of the salt that the product is bought and sold by the trade on the basis of its dry weight. In fact the dry weight of the merchandise was frankly accepted by the customs officials for the purpose of determining the value of the salts and the ad valorem duty which should be assessed thereon. The water which was found in the importation was not that which condenses on nearly all substances by natural processes and neither was it an impurity natural to the product as regarded by trade and commerce and therefore the water should not have been considered as part of the weight of the silver salts.—Shallus *v.* United States (1 Ct. Cust. Appls. 316, 318; T. D. 31408); Seeberger *v.* Wright et al (157 U. S. 183, 186).

The cases of United States *v.* Reid (120 Fed. 242); United States *v.* Baker Castor Oil Co. (2 Ct. Cust. Appls. 338; T. D. 32076); Heide *v.* United States (2 Ct. Cust. Appls. 399, T. D. 32166); Vitelli *v.* United States (3 Ct. Cust. Appls. 171, 173; T. D. 32460); Rosenstein *v.* United States) 4 Ct. Cust. Appls. 401; T. D. 33840); Earnshaw *v.* Cadwalader (145 U. S. 247) do not sustain the contention of the Government. Quite to the contrary, they tend to sustain the claims of the appellant when applied to the facts disclosed by the record.

As sulphoacid of anthraquinone is a dry crystalline substance and not a solution or paste and as the statute imposes an additional duty of 2½ cents per pound on sulphoacid of anthraquinone, it is apparent that that specific duty should have been assessed on that commodity and not on the water which was not a constituent part of it or natural to it as regarded by science and by trade and commerce.

The judgment of the Board of General Appraisers is *reversed.*