Esso Standard Oil Co. *v.* United States   (No. 5081)*

*(C.A.D. 797)

United States Court of Customs and Patent Appeals, April 11, 1962

*Sharretts, Paley & Carter, Eugene F..Blauvelt*, for appellant.

*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel) for the United States.

[Oral argument February 7, 1962, by Mr. Blauvelt and Mr. Welsh]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

MARTIN, Judge, delivered the opinion of the court:

This appeal is from a judgment of the Customs Court, Third Division, C.D. 2249, dismissing, in two consolidated cases, ▇ the importer's protest against the duty assessed on crude oil imported from Venezuela and assessed under section 4521 (formerly section 3422) of the Internal Revenue Code, as modified by the trade agreement with Venezuela, T.D. 53107, at ⅛ cent or ¼ cent per gallon, depending upon the A.P.I. gravity of the shipment. The classification and rate of duty are unchallenged. The protests are based on the contention that the tax was assessed on too great a quantity of merchandise, it being appellant's contention that allowance should have been made for all bottom sediment and water found in the merchandise.

The record shows that the bottom sediment and water in the merchandise covered by one protest, No. 59/1707 was 1.1 per centum and that in the merchandise covered by the other protest, No. 59/2082 was 0.9 per centum. In liquidating the merchandise, allowance was made only for such bottom sediment and water as exceeded 1 per centum. Thus, an allowance of 0.1 per centum was made on the merchandise of the first protest and no allowance was made on that of the second protest.

The provision of the Tariff Act of 1930 on which the assessment complained of is based is as follows:

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

SEC. 507. TARE AND DRAFT.

The Secretary of the Treasury is authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.

Also pertinent is section 15.7 of the Customs Regulations of 1943, which was issued pursuant to section 507, *supra*, and superseded article 813 of the Customs Regulations of 1931. It reads:

(*a*) Application for an allowance for excessive moisture or other impurities under section 507, Tariff Act of 1930, shall be made on customs Form 4317 and filed with the collector of customs within 10 days after the report of weight has been received by him.

(*b*) The collector shall cause such investigation to be made as may be necessary to determine whether or not the merchandise contains excessive moisture or other impurities not usually found in or upon such or similar merchandise, together with the amount thereof, and, if necessary, may refer the application to the appraiser for such determination.

(*c*) If the collector is satisfied from the reports received that the claim is valid, due allowance shall be made in the liquidation of the entry. (Sec. 507, 46 Stat. 732; 19 U.S.C. 1507.)

As pointed out in the opinion of the Customs Court, a chemical engineer in the employ of the appellant described bottom sediment and water in the following testimony:

Bottom sediment and water is, as the name describes, a solid—sediment is a solid material, mostly earthy matter which occurs in crude oil because it comes out of the ground; and water, of course, is water, and may, at times, have salt in it, certain salts which also occur because it comes out of the ground, where water can get into the oil. In addition to that, additional water may be picked up by crude oil in its transportation, because it may be pumped into tanks· which might have a little water accumulated in them because of condensation, or possibly rain water, or because it may be transported in ships which may have small leaks and let sea water in. Bottom sediment and water certainly is not petroleum. * * *

The same witness, on cross-examination, testified as follows concerning the occurrence of bottom sediment and water in crude petroleum:

XQ. Have you ever tested oil, crude petroleum such as what is in issue here, immediately upon importation? A. Yes; myself.

XQ. Have you done this often? A. Not very often, no. You mean personally? Have I tested it personally?

XQ. Yes. A. Very seldom.

XQ. In those tests that you have made, was water and bottom sediment present? A. In almost every case.

XQ. In almost every case where you've tested it immediately upon importation? A. Insofar as I can recollect.

In the latter connection, a section head of the traffic division of Esso Export Corporation, which division is responsible for the procurement of oil for tankers for that company, testified as follows:

XQ. You are, of course, intimately familiar with all the invoices, as I understand you have examined them all, and check them. Is it not a fact that all these invoices indicate that an allowance is made for water and bottom sediment? A. The invoice does not, itself, indicate that. The invoice always indicates the net amount.

XQ. I see. But is there always some water and bottom sediment? A. Not always.

XQ. In most cases? A. In most cases.

XQ. So that an allowance is made in most every shipment? A. That is correct.

At the trial the parties stipulated "that it is, and has been for at least the past 20 years, the practice in the oil industry, both in the United States, and elsewhere, to charge only for crude petroleum, after a deduction has been made for bottom sediment and water, as determined in a centrifuge test."

Appellant urges that the clause in the latter part of section 507 prohibiting "any allowance for draft or for impurities, other than excessive moisture and impurities not usually found" is confined to allowances by way of tare. It contends that the Customs Court erroneously treated that clause "as if it were a separate provision applicable to all measurements of dutiable merchandise." Appellant further takes the position that "tare" and "draft" are, by definition, deductions from weight, citing several definitions of "tare" and referring to customs regulations and court decisions where "tare" is said to be treated in that sense.

On the basis of the above contentions, appellant urges that section 507 does not apply to imported merchandise which is dutiable by the gallon, as is the crude oil under consideration here, and that the limitation therein against allowances for other than "excessive moisture and impurities not usually found" is not applicable. Appellant contends that allowance thus should have been made for all bottom sediment and water in the imported crude petroleum.

The two principal issues are whether section 507 applies in the case at bar and, if so, whether the excess of 1% of bottom sediment and water is the proper deduction to be allowed in the premises. We agree with appellant that all of section 507 must be read together and the allowance for excess moisture and impurities is encompassed by the word "tare" as it appears in the first part of that section. However, we disagree with appellant that this section applies only to imported merchandise measured by weight. Even though the lexicons relate "tare" to weight, in this section "tare" is not so limited; otherwise we would be compelled to construe the section to mean that Congress intended to provide one criterion for an allowance of moisture and impurity when imported merchandise is measured by weight and another when a different type of measurement is used. We do not believe that such a discriminatory result was intended by Congress.

As a further indication that the lexicons are not significant in this instance in determining the congressional intent as to the meaning of "tare" in the tariff statutes, it should be noted in each dictionary definition cited by appellant "tare" refers to a deduction from weight for a *container, receptacle, box or other package*, and yet there is no doubt that Congress intended a deduction for the extraordinary impurities within the meaning of "tare" and there is no mention of this connotation in the dictionaries. In *Socony Vacuum Oil Co., Inc.* v. *United States*, 44 CCPA 83, C.A.D. 641, this court said:

\* \* \* Granted, the term "tare," as commonly used, does not cover moisture and impurities; this term, however, as used in the tariff statutes, does include extraordinary impurities. *Shallus* v. *United States*, 1 Ct. Cust. Appls. 316, T.D. 31408; *United States* v. *Baker Castor Oil Co.*, 2 Ct. Cust. Appls. 338, T.D. 32076. \* \* \*

In the *Socony* case, this court had before it a situation similar to that in the case at bar. There, as here, the protest did not attack the rate of tax on the imported crude petroleum but claimed that the tax was assessed on too great a quantity of the merchandise because all of the imported crude petroleum, including 1.6 per centum of bottom sediment and water was assessed. This occurred because 1% had been established as the usual amount of such impurity and the importer failed to file an application for an allowance of excessive impurities as provided by section 15.7(a) of the Customs Regulations of 1943. There the principal attack was based on the contention that section 15.7(a) of the Customs Regulations of 1943 was unreasonable because it required the importer to file an application for the allowance; and, further, that section 507 is not applicable because of section 315 of the Tariff Act of 1930.[2] Although the specific argument of appellant here that section 507 is applicable only when weight is the measurement of the imported merchandise is not considered in that case, the whole tenor of that opinion supports the position that Congress intended section 507 to apply in this situation. The treatment of the relationship between section 507 and section 315 is a clear indication of this court's attitude concerning section 507 generally and in relation to section 315, this court stated:

Appellant argues that to assess a duty on the bottom sediment and water contained in the instant importation would be, in effect, to impose a duty upon a non-importation; that "It is axiomatic that customs duties are primarily to be levied upon imported merchandise of value which is to enter into the commerce of the United States in competition with domestically produced goods and which is deemed a proper source of revenue."; that in accordance with the foregoing axiom Congress has provided in section 315 of the Tariff Act of

²§ 315. \* \* \*

(c) Insofar as duties are based upon the quantity of any merchandise, such duties shall, except as provided in section 1001, paragraph 813, and section 1562 of this title (relating respectively to certain beverages and to manipulating warehouses), be levied and collected upon the quantity of such merchandise at the time of its importation.

1930 that duties shall "be levied and collected upon the quantity of such merchandise at the time of its importation"; and that section 315 applies to the instant case "quite independently of the provisions of section 507, except that Congress has also provided by the latter section that allowance shall be made for the amount of moisture and impurities * * * that is excessive * * *."

To grant appellant's assertion as to the role section 315 plays in the Tariff Act would be incompatible with the view we have taken as to the significance of section 507. It would be as logical to conclude that section 315 renders null and void the language of section 507 to the effect that "in no case shall there be any allowance for draft or for impurities not usually found in or upon such or similar merchandise," for this language clearly imposes a duty upon a non-importation, i.e., moisture and impurities usually found in or upon such or similar merchandise. *Obviously, section 315 must be read in the light of section 507.* [Emphasis ours.]

We agree with these conclusions.

As another indication that section 507 does not apply here, appellant argues that section 15.7 of the Customs Regulations states that the application for an allowance under section 507 shall be filed within ten days after the report of *weight* has been received by the collector. It states that this demonstrates that importations measured by other than weight are not within the purview of that section. Further, appellant contends that since this regulation cannot apply in this case, section 507 becomes inoperative insofar as the importations at bar are concerned. If section 507 is applicable, as we have concluded, the wording of this administrative regulation cannot make the section inoperable unless the regulation as applied here is void. In the instant case, the collector accepted the report of *gauge* as a compliance with the regulation and has made an allowance in accordance with the Bureau of Customs' ruling issued in 1936 and published in T.D. 48204.[3] This procedure was in accordance with the law. ██ It seems to us that administrative regulations should be construed, whenever possible, so that the statute to which they relate will be operative and carry out the intent of Congress.

Coming now to the question of the deduction per se, the Bureau of Customs' ruling was promulgated in accordance with law. There is abundant evidence which confirms the fact that bottom sediment and water is found in almost all importations of crude petroleum. On the other hand, no evidence was introduced by appellant that indicated in the least that 1 per centum was an unreasonable percentage to establish as the usual amount of bottom sediment and water. Since the

---

[3] T.D. 48204 reads as follows:

\* \* \* \* \* \* \*

(5) *Crude petroleum.*—Bottom sediment and water in excess of 1 percent in importations of crude petroleum and fuel oil would be considered excessive within the purview of section 507 of the Tariff Act of 1930. In view thereof, where the importer complies with the requirements of article 813 of the Customs Regulations of 1931, allowance should be made in liquidation of such entries for water and sediment in excess of 1 percent. Bureau letter to collector of customs, Baltimore, Md., February 26, 1936. (75398.)

collector in the protest at bar made allowance for all·bottom sediment and water in excess of 1 per centum we *affirm* the judgment of the Customs Court.