SPENCER & CO. v. UNITED STATES.

(Circuit Court, S. D. New York. January 4, 1906.)

No. 3,953.

CUSTOMS DUTIES—MEASUREMENT—ALLOWANCE FOR IMPURITIES IN NUTS.

In ascertaining the dutiable weight of shelled nuts dutiable by the pound, under Tariff Act July 24, 1897, c. 11, § 1, Schedule G, pars. 269, 270, 30 Stat. 172 [U. S. Comp. St. 1901, pp. 1651, 1652], no allowance should be made for impurities in importations not shown to contain abnormal quantities of foreign matter, nor to vary from the ordinary wholesale condition.

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision below, see G. A. 5,943 (T. D. 26,090), affirming the assessment of duty by the collector of customs at the port of New York on importations under tariff act July 24, 1897, c. 11, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626].

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

Henry A. Wise, Asst. U. S. Atty.

PLATT, District Judge. The importers claim allowance for impurities found in certain shelled nuts. The nuts are of three varieties, walnuts, almonds, and filberts; the first in boxes, and the other two in bags. Walnuts and filberts were assessed at five cents per pound, under paragraph 270, and almonds at six cents per pound, under paragraph 269, present act (Act July 24, 1897, c. 11, § 1, Schedule G, 30 Stat. 172 [U. S. Comp. St. 1901, pp. 1651, 1652]).

They say that the proof is clear and that it is only necessary to decide whether the case falls within the principles of the Flaxseed Case (157 U. S. 183, 15 Sup. Ct. 583, 39 L. Ed. 665), or whether

we shall be guided by the decision in the Currant Case (United States v. Ried, Murdoch & Co., 120 Fed. 242, 56 C. C. A. 538). Both cases make it plain that the important thing is to find out what the shelled nuts of commerce were when paragraphs 269 and 270 were enacted. These impurities are said to have appeared in the nuts since then. If this were so, and if the percentage of impurities has been clearly shown, there would be great force in the contention. Let us look for a moment and see: The collector assessed on the weigher's returns because there was nothing to show "abnormal quantities of foreign matter" in the importation, or that the merchandise varied in any respect from the "ordinary wholesale condition." The importer tries to overcome these conclusions of fact by testimony taken before the appraisers, and later in court. Over 6 per cent. of impurities were found in some of the consignments, but a claim is only made for an average reduction of 3 per cent., and for our purposes we may deem the appellants to have waived any claim for a greater amount. The practical effect of a ruling in their favor might be to establish that percentage as the average allowance hereafter on like merchandise. The testimony before the appraisers and here, as I read it, all tends to show that the nuts of commerce did not contain as much waste and dirt prior to the present act as they do now, but the trade has at all times called them shelled nuts. The buyers may have grown more particular, but such a condition of mind on the part of the trade can hardly be said to establish a commercial usage. When the present act was passed the shelled nuts of commerce had some impurities, and it is difficult to understand the reason for asking an allowance now, when the percentage of waste has increased from perhaps 1 per cent. to perhaps 3 per cent. It is even more difficult to discover why the entire percentage of impurity should be allowed, because that would leave the nuts paid for somewhat cleaner and purer than the shelled nuts of commerce, which Congress had in mind. At what particular percentage do the impurities become appreciable? What percentage can be fairly called negligible?

The decision of the board must be affirmed.