## WOOD & SELICK *v.* UNITED STATES (No. 1035).[1]

IMPURITIES IN RAISINS.

In order for impurities to be allowed for as tare, the importer must establish by a preponderance of evidence that, at the time the law was passed, the impurities claimed as demanding an allowance were other than the ordinary impurities commonly found in that kind of merchandise as traded in; and that it was the general, uniform, and definite custom of the trade not to regard such impurities as part of the goods and to make an allowance therefor. No such case is here presented.

United States Court of Customs Appeals, May 12, 1913.

APPEAL from Board of United States General Appraisers, Abstract 30094 (T. D. 32858).

[Affirmed.]

*Brown & Gerry* for appellants.

*William L. Wemple*, Assistant Attorney General (*William A. Robertson*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

A consignment of raisins imported at the port of New York was subjected by the collector of customs to a duty of $2\frac{1}{2}$ cents per pound under the provisions of paragraph 275 of the tariff act of 1909. The duty imposed was assessed on the weight of the raisins at the time of landing and without regard to whether the goods were cleaned or uncleaned. The importers made no objection to the classification of the importation, but protested that the rate of duty fixed by paragraph 275 was applicable to the net weight of the merchandise only and could not be applied to the substances with which the raisins were commingled. For the twigs, dirt, and other impurities mixed with the raisins the importers therefore demanded of the collector that a reasonable allowance, based on actual tests, be made in conformity with commercial practice. The collector declined to make any allowance and the papers were duly forwarded to the Board of General Appraisers, which overruled the protest. The importers

---

[1] Reported in T. D. 33439 (24 Treas. Dec., 806).

appealed and now contend that the allowance claimed should have been made and that their protest should have been sustained.

In order that impurities might be allowed for as tare it was incumbent on the importers to establish by a preponderance of evidence that at the time the tariff act was passed such impurities were not the ordinary impurities usually found in the merchandise as bought and sold in the trade of the country and that it was the general, uniform, and definite custom of the trade not to regard such impurities as part of the goods and to make allowance therefor. United States *v*. Baker Castor Oil Co. (2 Ct. Cust. Appls., 338; T. D. 32076); Vitelli & Son *v*. United States (3 Ct. Cust. Appls., 171; T. D. 32460); Earnshaw *v*. Cadwallader (145 U. S., 247); Seeberger *v*. Wright (157 U. S., 183); United States *v*. Reid, Murdoch & Co. (120 Fed., 242); Spencer *v*. United States (143 Fed., 916).

On the hearing no evidence was introduced by the importers which would justify the conclusion that as imported the goods contained more than the normal amount of dirt, twigs, or other impurities. On the contrary, Philip Corell, an employee of the importers and a witness in their behalf, testified that shipments of raisins ordinarily contained from 5 to 7 per cent of sand, stems, and stalks, and that that percentage of impurities was not exceeded in the shipments now the subject of controversy. Under such circumstances the importers were entitled to no deduction for impurities and the rate of duty prescribed by the statute was properly applied to the weight of the merchandise in the condition in which imported.

On the trial of the issues raised by the protest the appellants offered to prove by the witness Herter that in the trade the term "raisins" was understood to mean cleaned raisins. The board refused to admit the testimony and the importers excepted. Counsel for the appellants now contend that this evidence should have been admitted and that the board erred in excluding it. With this contention we can not agree. Prior to calling the witness Herter the witness Corell testified on direct examination that the particular raisins under consideration contained from 5 to 7 per cent of impurities. In response to questions touching his qualifications, propounded to him by General Appraiser Somerville, without objection, he further stated on direct examination that he cleaned similar goods "right along," and that the ordinary amount of impurities found was 7 per cent, which was the maximum percentage found in the importations now involved in this appeal. In view of the testimony of Corell, any inquiry as to whether cleaned or uncleaned raisins was meant by "raisins" became wholly immaterial and irrelevant except upon the assumption that it was the intention of the importers to impeach their own witness. We can not assume any such purpose on the part of the appellants, especially as nothing of the kind is suggested by the record and no ground for impeachment was laid.

The decision of the Board of General Appraisers is *affirmed*.