(C. D. 1484)

PEPPARD SEED COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 11, 1952)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*Richard H. Welsh* and *Richard M. Kozinn,* special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: This is a protest against the collector's assessment of duty on merchandise described in the invoice as unthreshed Kentucky bluegrass seed. After importation, plaintiff requested

permission to segregate under the provisions of section 508 of the Tariff Act of 1930. As a result of a threshing process, 24,294 pounds of bluegrass seed were obtained and assessed with duty at 2 cents per pound under paragraph 763 of said act, as amended by the General Agreement on Tariffs and Trade, T. D. 51802; 6,744 pounds of material left after segregation were destroyed under the supervision of the Department of Agriculture and no duty was assessed thereon; and 9,369 pounds of material, which were alleged to have been sent to the city dump by the plaintiff and destroyed, although not under Government supervision, were assessed with duty at 2 cents per pound under paragraph 763, as amended.

Plaintiff claims that the merchandise as imported did not consist of a mixture of two or more products subject to different rates of duty and thus segregable under section 508 of the Tariff Act of 1930, but that it should be classified under one of the following provisions of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, T. D. 51802:

1. Free of duty under paragraph 1722 as a crude vegetable substance.

2. At $1.25 per ton under paragraph 779 as hay.

3. At 50 cents per ton under paragraph 779 as straw.

4. At 5 per centum ad valorem under paragraph 1558 as nonenumerated unmanufactured articles.

Plaintiff claims further that if the court should find the merchandise segregable under the provisions of section 508, the portion of merchandise sent to the city dump should be classified under one of the following provisions of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, T. D. 51802:

1. At 2½ per centum ad valorem under paragraph 731, as "Screenings, scalpings, chaff, or scourings of * * * other grains or seeds."

2. At $1.25 per ton under paragraph 779 as hay.

3. At 50 cents per ton under paragraph 779 as straw.

4. At 7½ per centum ad valorem under paragraph 1555 as "Waste, not specially provided for."

5. At 5 per centum ad valorem under paragraph 1558 as nonenumerated unmanufactured articles.

The Government contends that the merchandise is of such a nature as to be entitled to segregation, if requested, and that the merchandise not destroyed under Government supervision is not dutiable at a different rate than that assessed on the portion recovered.

The pertinent provisions of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, T. D. 51802, are as follows:

PAR. 763. Grass seeds and other forage crop seeds:

\*      \*      \*      \*      \*      \*      \*

Bluegrass_____ 2¢ per lb.

*Provided*, That no allowance shall be made for dirt or other impurities in seed of any kind.

PAR. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for: \* \* \* __ Free.

PAR. 1555. Waste, not specially provided for_____ 7½% ad val.

PAR. 1558. All raw or unmanufactured articles not enumerated or provided for (except frogs and frog legs)_____ 5% ad val.

PAR. 779. Hay_____ $1.25 per ton of 2,000 lb.

PAR. 779. Straw_____ 50¢ per ton of 2,000 lb.

PAR. 731. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds:

Unground, or ground_____ 2½% ad val.

SEC. 508. [Tariff Act of 1930] COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

At the trial, plaintiff's first witness, James M. White, treasurer of Peppard Seed Company, testified that he saw the instant merchandise in its imported condition and that it consisted of a mixture of seed and grasses and other material gathered with a machine called a stripper. The other material was composed of straw, weeds, foreign material found in a hay meadow, and dirt. Such merchandise, after it comes from the field, is cured by natural means to get the moisture out of it. The merchandise involved herein was about 8 inches in length.

Mr. White stated that a request for segregation was made because this type of merchandise must be cleaned and threshed, as it may contain from 30 to 70 per centum trash. Such segregation took place under customs supervision. He said that the merchandise in its imported condition, seed and stalks combined, is not merchantable because it could not be passed by the Department of Agriculture on account of its nonpurity.

The witness testified that 95 per centum of bluegrass seed is used for lawn purposes but that the grass could be used as fodder for cattle. However, the merchandise in its imported condition is not hay because it has no feed value, being nothing but dried stems and trash.

Walter R. Crispin, plaintiff's second witness, testified that he is in charge of the activities of the Federal Seed Act and the Seed Verification Service of the U. S. Department of Agriculture in the Midwest. He had seen a sample of the instant merchandise in its imported condition and said it consisted of stripped or unthreshed bluegrass about 8 inches in length including the head and a portion of the stalk. It was turned down on importation because of the low pure live seed content, the import requirements for Kentucky Bluegrass being 65 per centum pure live seed. He said that it did not meet the definition of hay as it was too mature to be of good feeding value.

The witness testified that after segregation, 448 pounds of material were destroyed under the supervision of a Department of Agriculture representative and 113 bales of straw, weighing 6,005 pounds, were likewise destroyed. The Government at this time conceded that due to shrinkage a total of 6,744 pounds was not assessed with duty.

Harvey L. Miller, assistant superintendent of Peppard Seed Company, testified that he was present when the within merchandise was segregated under the supervision of a customs representative. He said that after the merchandise went through the thresher, the seed, so-called hay product, and the remaining material were separated. The seed portion consisted of bluegrass seed and some screenings which were cleaned later to recover the good portion of the seed. The so-called hay product consisted of bluegrass stems, 8 to 10 inches long. It was baled and held for instructions from the Department of Agriculture and was later destroyed under the supervision of that Department. The remaining material, consisting of chaff, broken-up leaves, bluegrass stems, and soil, was sent to the city dump. It was not destroyed under the supervision of customs officials or the Department of Agriculture because it was supposed that it would not be subject to duty as it had no seed value. The witness said that this procedure was discussed with the customs representative and it was decided that there was no reason to hold the material as it was worthless.

Kelci Liston, another employee of the plaintiff, who was present when the segregation took place, stated that he thought they were in order in disposing of the material without supervision.

O. H. Garrison, appraiser at the port of Kansas City, testified that he was not given an opportunity to examine the segregated material; therefore, appraisement and classification of the portion sent to the city dump were made at the entered value and classification.

William Bryan Goddard, the examiner who supervised the segregation, testified that he saw the material that was sent to the city dump; that it consisted of refuse, hay, straw, and material left after threshing; and that it was considered worthless by the people who handled it.

On being made Government's witness, Mr. Goddard stated that he did not tell Mr. Liston and Mr. Miller to destroy that material but told them that the Department of Agriculture would handle its destruction.

The first question to be determined is whether this merchandise was properly segregable under the provisions of section 508, *supra*. As imported, it consisted of the seed portion and a part of the stalk of Kentucky bluegrass. It was refused admission by the Department of Agriculture because of the low pure live seed content under the provisions of the Federal Seed Act (U. S. C., title 7, secs. 1581, 1582, 1583, 1584). According to the joint regulations issued by the Secretary of the Treasury and the Secretary of Agriculture for the enforcement of that act and in effect at the time of entry of the instant merchandise, such seed may be cleaned or processed under the supervision of an employee or agent of the Department of Agriculture, and, if the cleaned seed is found to meet the requirements of the act, that portion may be admitted. Refuse from such cleaning shall be destroyed under the supervision of an employee or agent of the Department of Agriculture. (Code of Federal Regulations, Cum. Supp., title 7, secs. 201.225 and 201.226.)

In the instant case, it appears that the importer requested segregation under the provisions of section 508 of the Tariff Act of 1930 and had the merchandise cleaned pursuant to the regulations issued under the Federal Seed Act. From this process, there was obtained a portion of merchandise which was permitted entry as seed, a portion which was destroyed under the supervision of the Department of Agriculture as provided in the regulations, and a portion that was destroyed without such supervision.

In order for the merchandise to be entered, the seed had to be separated from the balance of the plant. Two distinct items were found, bluegrass seed and a mixed material which remained after threshing. The seed was assessed with duty under paragraph 763, as amended, and a portion of the remaining material which was destroyed was not assessed with duty. Since a part of the merchandise was subject to duty and a part was not, segregation under section 508 was proper. In this connection, the tariff act and the Federal Seed Act and the regulations issued thereunder are *in pari materia* and should be read together. Note that the regulations issued for the enforcement of the Federal Seed Act are joint regulations of the Secretary of the Treasury and the Secretary of Agriculture, and that section 12.16 of the Customs Regulations of 1943 provides that the importation of agricultural and vegetable seeds is governed by such joint rules and regulations. Thus, merchandise which is not admissible under the Federal Seed Act without cleaning or processing which results in a separation of the merchandise as imported into two or more commod-

ities is segregable under section 508 of the tariff act. The granting of plaintiff's application for permission to segregate in the instant case was proper and each item obtained after separation is classifiable under the appropriate paragraph of the tariff act.

Plaintiff's alternative claim is that the portion of the merchandise which was sent to the city dump and not destroyed under Government supervision was erroneously assessed with duty under the provisions of paragraph 763, as amended, and is properly classifiable under some other paragraph of the tariff act.

In order for plaintiff to prevail, it must establish not only that the collector's classification is wrong, but also that the classification for which it contends is correct. *W. T. Grant Company* v. *United States*, 38 C. C. P. A. (Customs) 57, 60, C. A. D. 440, and cases there cited. In the instant case, the collector classified the portion of the merchandise with which we are now concerned under paragraph 763, as amended, as bluegrass seed. Mr. Miller testified that this portion consisted of chaff, broken-up leaves, bluegrass stems, and soil, and Mr. Goddard said that it consisted of refuse, hay, straw, and material left after threshing. Obviously, such material is not bluegrass seed. However, as imported, it was mixed with bluegrass seed and paragraph 763 provides that "no allowance shall be made for dirt or other impurities in seed of any kind." It is clear that part, at least, of this material consisted of dirt and impurities. There is nothing to show how much of the material was dirt and impurities and how much, if any, was something else. Presumably, the collector found that the material was entirely dirt and impurities and, therefore, classifiable with the seed itself under paragraph 763, as amended.

A case in point is *Rosenbaum Grain Corporation et al.* v. *United States*, 26 C. C. P. A. (Customs) 202, C. A. D. 18. There, an importation of rye was found to be contaminated with excreta, and permission was granted to clean the same. As a result, there was obtained a portion of rye which was classified as such and a portion of excreta and refuse which was destroyed under customs supervision and for which an allowance was made. In addition, however, a portion of the shipment was lost during the cleaning process for which no allowance was granted by the collector. The court affirmed the decision of the collector, stating (pp. 207, 209):

There is no evidence in the record from which it can be ascertained what proportion of the loss was due to dust, to excreta, or to screenings, etc., which could not be preserved for destruction under customs supervision. While the entire loss is established, and the quantity of excreta, etc., destroyed under customs supervision is also established, the difference between these two amounts is shown only as consisting of loss through moisture, dust, excreta, etc., which passed off in the air in the cleaning and drying processes, and necessarily the separate

amounts of each could not be determined. This is termed in the evidence as an "invisible loss."

It follows from the foregoing that a part of appellant's claim is based upon the difference between the weight of the "good rye" when released and its weight at the time of entry, but we are unable to ascertain from the record what this difference amounts to, since there is nothing to show what the good rye weighed at the time of entry.

It therefore becomes unnecessary for us to determine whether the losses other than of moisture in the good rye and of excreta, etc., preserved and destroyed under customs supervision should be considered as nonimportations, for even if they should be so considered appellants have not established the amount of such losses.

\*     \*     \*     \*     \*     \*     \*

While we regard it as unnecessary to our decision herein we think it proper to observe that, so far as the record discloses, the so-called "invisible loss," insofar as it consisted of dust, chaff, etc., was properly a part of the dutiable weight of the rye, for it does not appear that the same was in excess of the usual amount found in such merchandise. At any rate, it does appear that it was the presence of excreta which caused the issuance of the detention orders, and there is no evidence in the record as to what part of the "invisible loss" constituted such excreta.

In the instant case, plaintiff has not established what part of the material consisted of dirt and impurities for which no allowance could be made and which was properly classifiable under paragraph 763, as amended, and what part, if any, consisted of material, which, if destroyed under Government supervision, could be considered a nonimportation. It follows that the presumption of correctness attaching to the collector's classification has not been overcome.

Since the record does not show the composition of the material in question in other than a general way and without indicating the amounts or percentages of the component parts, it cannot be held that the importer has met its burden of proving that the classification adopted by the collector is erroneous and that some other classification is correct. It is, therefore, unnecessary to consider the various paragraphs of the tariff act which plaintiff claims are applicable.

On the record herein, we hold that the merchandise as imported was segregable under the provisions of section 508 of the Tariff Act of 1930 and that the collector properly assessed duty on the bluegrass seed obtained in the segregating process and on that portion of the remaining material, which was not destroyed under Government supervision, at 2 cents per pound under paragraph 763 of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, T. D. 51802.

The protest is overruled and judgment will be rendered for the defendant.