(C. D. 1789)

N. M. Albert & Company
Jacob Sohnen & Son Feather Co., Inc. } v. United States

United States Customs Court, Third Division

(Decided June 5, 1956)

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before Ekwall and Johnson, Judges

Johnson, Judge: The merchandise involved in these protests, consolidated at a pretrial conference, consists of crude feathers assessed with duty at 10 per centum ad valorem under paragraph 1518 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and the President's proclamation of May 4, 1948, T. D. 51909. Neither the rate of duty nor the classification of the merchandise is in controversy. It is claimed, however, that duty was assessed on too great a weight of merchandise; that an allowance for dirt and impurities in excess of the amount usually

found in such merchandise should have been made; and that the applicable section of the Customs Regulations of 1943 (section 15.7) is unreasonable and void.

The pertinent provision of the Tariff Act of 1930 is as follows:

SEC. 507.  TARE AND DRAFT.

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.

The relevant provisions of the Customs Regulations of 1943 are as follows:

15.7  Excessive moisture and other impurities; application for allowance; procedure.—(a)  Application for an allowance for excessive moisture or other impurities under section 507, Tariff Act of 1930, shall be made on customs Form 4317 and filed with the collector of customs within 10 days after the return of weight has been received by him.

(b)  The collector shall cause such investigation to be made as may be necessary to determine whether or not the merchandise contains excessive moisture or other impurities not usually found in or upon such or similar merchandise, together with the amount thereof, and, if necessary, may refer the application to the appraiser for such determination.

(c)  If the collector is satisfied from the reports received that the claim is valid, due allowance shall be made in the liquidation of the entry.

At the pretrial conference, there were offered and received in evidence, as to each entry, the consumption entry permit, bearing on the reverse side the inspector's report, and the weigher's return (plaintiffs' exhibits 1 through 6, inclusive).  The dates appearing on said documents are as follows:

| Protest No. | Inspector's report | Weigher's return |
| --- | --- | --- |
| 157769–K | December 14, 1948 | December 22, 1948 |
| 160187–K | March 7, 1949 | March 16, 1949 |
| 167568–K | November 29, 1949 | December 20, 1949 |

It was stipulated and agreed by counsel that 2 days after the date of each weigher's return, it was filled with the collector, and that 2 days after the date of each inspector's report, the merchandise covered thereby was delivered to the importer and released from customs custody.

It was further agreed that no notice was given to the importer that the weigher's returns had been filed with the collector and that the regulations (section 15.7, Customs Regulations of 1943, supra) were not complied with.

At the trial, Ernest Sohnen, president of the importing corporation, testified that the company is engaged in the importation, processing, and sale of feathers; that he has been associated with it for 20 years

and has been president for 6 years. He stated that he purchased the merchandise involved herein and that, in each case, a formal contract was entered into between the representative of the seller and the importer. The contracts of purchase involving the merchandise herein were received in evidence. In two instances (protests 157769–K and 160187–K), the contracts specify that the dust content shall not exceed 10 to 12 per centum (plaintiffs' exhibits 7 and 8). The contracts involving the merchandise in protest 167568–K state that the merchandise shall be "As per sample" (plaintiffs' exhibits 9 and 10). The witness testified that the latter contracts were negotiated with a representative of the seller; that a sample was examined and a definite standard arrived at with respect to the down, dirt, impurities, and feather content; and that it was agreed that the merchandise represented what was considered a normal percentage of dirt and impurities (15 per centum).

The witness testified that he saw the merchandise covered by protest 157769–K when it came into the plant. He personally weighed the bales, then had them opened and portions of the contents spread out for examination. By hand manipulation, that is, by patting or striking samples of the merchandise and observing the amount of dust or dirt that came out, he estimated that it contained an excessive amount of impurities. He called this to the attention of the seller's representative, and a further examination was made in the presence of the latter. The merchandise was weighed, washed, dried, and reweighed. The weights before and after cleaning were compared and the percentage of dirt determined. Out of a total of 5 bales, weighing 2,020 pounds, it was found that the dirt and impurities weighed 586 pounds, representing 29 per centum of the merchandise.

The same procedure was followed as to the other shipments. In protest 160187–K, the amount of dirt was found to be 4,117 pounds, representing 31 per centum of the merchandise, and in protest 167568–K, the dirt amounted to 60 per centum of the merchandise. The witness stated that the cleaning process does not destroy or remove any portion of the feathers, but may remove about one-half of 1 per centum of the natural oil contained in feathers.

According to the witness, it is customary to specify the quantities of dirt and impurities that are agreed upon as part of the shipment and, in the normal course, the merchandise conforms to the contract. In instances where there is a variation, it is customary to make a claim for an allowance with respect to the excessive dirt and dust. Such claims were made in these cases.

The witness explained that the sample used to determine dirt and impurities by the tapping method amounts to a quarter to a half of a pound and that 10 or 12 tests will be made. The percentage of dust

and dirt can be estimated by the tests within a 5 per centum margin of error. The entire test requires about 10 or 15 minutes to make.

Plaintiffs' second witness was Karl Eisner, president of the York Feather & Down Corp., which buys, processes, and sells feathers and down. He said he had been president of the company for 28 years and had purchased and sold feathers and was acquainted with the processes by which they are cleaned. He stated that it is the usual trade procedure, in connection with merchandise imported from the Orient, to specify the quantity of dirt and dust agreed upon by the parties. Where the amounts are not specified, sales are mostly made by sample. When the merchandise does not conform to the contract, it is customary to make a claim for an allowance.

The issue before the court is whether, under these circumstances, the plaintiffs may be granted an allowance for the excessive dirt and impurities found in the merchandise.

It is well settled that ordinary impurities do not constitute tare, but that an allowance may be made for extraordinary impurities such as are not commonly present in the merchandise as bought and sold in trade and commerce. *Seeburger* v. *Wright & Lawther Oil and Lead Manufacturing Co.*, 157 U. S. 183; *Shallus* v. *United States*, 1 Ct. Cust. Appls. 316, T. D. 31408; *United States* v. *Baker Castor Oil Co.*, 2 Ct. Cust. Appls. 338, T. D. 32076. Such an allowance is now permitted under section 507, *supra*. In order to recover, it is incumbent upon plaintiff to establish that, at the time the tariff act was passed, such impurities were not the ordinary impurities usually found in the merchandise as brought and sold in the trade of the country and that it was the general, uniform, and definite custom of the trade not to regard such impurities as part of the goods and to make allowance therefor. *Wood & Selick* v. *United States*, 4 Ct. Cust. Appls. 228, T. D. 33439; *Robert Werk & Co.* v. *United States*, 57 Treas. Dec. 403, T. D. 43904.

In the instant case, it is evident that the impurities in the imported merchandise were in excess of the amount which was specified in the contract or contained in the sample. It also appears that it was customary in the trade for the percentage of impurities in such merchandise to be specified in the contract or for the merchandise to conform to the sample and for allowances to be made for excessive impurities.

Assuming, without deciding, that this evidence is sufficient to establish that the impurities found in the instant merchandise were not the ordinary impurities usually found in such merchandise as bought and sold in the trade, we must determine whether plaintiffs may be granted any allowance when the regulations promulgated under the authority of section 507, *supra*, have not been complied with. Such regulations have been held mandatory, and compliance

therewith a condition precedent to the right to recover. *United States* v. *Ingram & Co.*, 17 C. C. P. A. (Customs) 228, T. D. 43668; *York Feather & Down Corp.* v. *United States*, 40 C. C. P. A. (Customs) 51, C. A. D. 496; *Pacific Coast Glass Co.* v. *United States*, 63 Treas. Dec. 1220, Abstract 22732; *American Bitumuls Co.* v. *United States*, 10 Cust. Ct. 106, C. D. 732; *The Dan Malloy Company* v. *United States*, 35 Cust. Ct. 315, Abstract 59486. In order to prevail, plaintiff must sustain the burden of proving compliance or of establishing that the regulations are unreasonable or contrary to the statute. *United States* v. *McGraw Wool Co.*, 19 C. C. P. A. (Customs) 205, T. D. 45296; *United States* v. *Browne Vintners Co., Inc.*, 34 C. C. P. A. (Customs) 112, C. A. D. 351; *Davies, Turner & Co.* v. *United States*, 25 Cust. Ct. 182, C. D. 1283.

In the instant case, plaintiffs claim that an allowance should be made, although the regulations have not been complied with, not only on the ground that the regulations are unreasonable, but also on the ground that the excessive impurities constitute a nonimportation which may not be assessed with duty.

It has long been held that revenue should be collected only upon the quantity or weight of merchandise which actually arrives in this country. *Marriott* v. *Brune*, 9 How. 619; *Lippincott Co.* v. *United States*, 11 Ct. Cust. Appls. 29, T. D. 38646. It is also well settled that portions of merchandise which are decayed and utterly worthless are considered nonimportations. *Lawder* v. *Stone*, 187 U. S. 281. In such cases, the issue before the court is whether or not there has been an importation, and compliance with customs regulations is not a condition precedent to recovery. *United States* v. *Browne Vintners Co., Inc., supra.*

In *Marriott* v. *Brune, supra,* the court said that where a portion of a shipment does not arrive, it cannot be taxed, and its exemption from duty does not depend upon any specific enactment of Congress. It was noted, however, that in the case of tare and draft, allowances are made under positive provisions in acts of Congress.

The principle of *Lawder* v. *Stone, supra,* is that goods which have been so decayed as to be utterly worthless do not constitute merchandise imported into the United States. The merchandise involved herein was not worthless. It was not damaged or decayed in transit. The impurities are a part of the merchandise and cannot be separated from the feathers and held a nonimportation. *Consolidated Elevator Co.* v. *United States*, 8 Ct. Cust. Appls. 267, T. D. 37536; *Pacific Vegetable Oil Corp.* v. *United States*, 15 Cust. Ct. 161, C. D. 964.

Section 315 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides that duties are to be assessed

only upon the quantity of merchandise imported. However, said section must be construed with section 507, insofar as impurities are concerned. Under that section, an allowance is permitted only as to *excessive* impurities, and the quantity of impurities usually found in the merchandise, whether or not worthless, is subject to duty. *Cargill Grain Co., Inc.* v. *United States*, 30 C. C. P. A. (Customs) 78, C. A. D. 219. In that case, the court stated (p. 88):

The statute clearly contemplates that there may exist impurities in imported merchandise, but that their presence shall not affect the duties to be levied with respect to such merchandise unless the impurities are of a character, or possibly in an amount, not usually found in such or similar merchandise.

In our view, therefore, impurities are not to be considered nonimportations within the principle of *Lawder* v. *Stone, supra,* but are subject to duty and allowances as provided in section 507, *supra,* and the regulations promulgated thereunder. In *York Feather & Down Corp.* v. *United States, supra,* a case involving a claim that dirt and impurities in feathers were not subject to duties, the court stated that the case of *United States* v. *Browne Vintners Co., Inc., supra,* which involved a nonimportation, was not applicable. It was held that, since no application for an allowance for excessive impurities had been filed in accordance with the regulations, plaintiff could not recover.

In the instant case, plaintiffs claim, however, that the regulations are unreasonable in that the importer is required to file an application for an allowance within 10 days after the weigher's report has been received by the collector, but the collector is not required to notify the importer of the date of such receipt.

Similar regulations have been before the courts on other occasions. In *Frame & Co.* v. *United States,* 46 Treas. Dec. 355, T. D. 40476, the regulations provided that the application for an allowance "must be filed with the collector not later than five days after the return of weight." Compliance with the regulation was held mandatory, and it was stated (p. 357):

If the importer had acted promptly and filed his application for reduction of the duty on the excessive moisture or absorption of water on the voyage within five days after the return of the weight, the purpose of the regulations, which are reasonable, could have been effectuated, and if the contention of the importer is correct, relief could have been afforded him. The object of the regulation was for the wise purpose of enabling the facts to be ascertained while they were fresh, before any change in the condition of the merchandise, while it could be examined and correct judgment formed as to the amount and weight of the moisture.

In *Pacific Coast Glass Co.* v. *United States, supra,* Article 732 of the Customs Regulations of 1923, which provided that applications

for allowance for moisture must be filed with the collector "not later than 10 days after the return of weight," was held valid and reasonable and compliance therewith a condition precedent to the right of recovery.

The same contention as plaintiffs make in the instant case was before this court in *American Bitumuls Co.* v. *United States, supra,* where the regulation provided, as here, that the application be filed with the collector within 10 days after the return of weight had been received by him. The court held it reasonable and valid, stating (p. 110):

Inasmuch as the regulations require dock books showing the completed returns of weight to become public records within 3 days after a ship's cargo has been weighed, it is clear that an undue hardship or unreasonable time limitation is not placed upon the importer. The cases cited by the plaintiff in this respect are not in point. The regulations there required of the importer conditions impossible to perform or such as would require the importer to surrender his legal rights, while here all that is required is diligence upon the part of the importer. * * *

Sections 27.39 and 27.40 of the Customs Manual of 1943, in effect at the time of this importation, provide that weighing, gauging, or measuring officers shall make correct entries in dock books of goods weighed, gauged, or measured; that reports shall be prepared from said dock books; that such reports shall be filed in the collector's office 3 days after the work has been completed; and that certificates or copies shall be furnished to parties in interest at their expense. Under these circumstances, it appears that the importer could have ascertained the dates of the respective weigher's reports and their filing with the collector in time to file applications for allowance, in accordance with the regulations.

Moreover, in the instant case, it appears that plaintiffs received each shipment a considerable time prior to the date the weigher's return was filed with the collector; that the merchandise was examined when it came into the plant; and that the test by which the amount of impurities could be estimated could be made in 10 or 15 minutes. The plaintiffs, therefore, had knowledge of the excessive impurities independent of anything in the weigher's reports and could have prepared and filed applications for allowance within the period provided by the regulations.

For the reasons stated, we.hold that the collector's assessment of duty on this merchandise was proper, and that, in view of the non-compliance with the mandatory regulations, plaintiffs' claims for an allowance for impurities in excess of the quantity usually found in such merchandise must be overruled.

Judgment will be rendered accordingly.