(C.D. 2302)

F. W. Myers and Co., Inc. *v.* United States

United States Customs Court, Third Division

(Decided December 11, 1961)

*Eugene R. Pickrell* (*George E. Long* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., dissenting

JOHNSON, Judge: The merchandise involved herein is described on the entry as Indian shelled groundnuts. It was imported from Canada at the port of Port Huron, Mich., on June 3, 1955. The portion which was not thereafter exported was assessed with duty as shelled peanuts at 7 cents per pound under paragraph 759 of the Tariff Act of 1930 and with a fee of 2 cents per pound under the Presidential proclamation of May 16, 1955 (T.D. 53808). It is claimed, in the original protest, that the chaff, hearts, etc., denatured, covered by the entry, are properly classifiable under paragraph 1555, as modified, at 4 per centum ad valorem, as waste, not specially provided for. In an amendment to the protest, it is claimed, in the alternative, that the liquidation is null and void as the merchandise included chaff, hearts, and other waste, which was denatured under customs supervision and which is dutiable under paragraph 1555, as modified, as waste, and for which a separate value was not established.

This case has been submitted upon the official papers and a stipulation of counsel. The following facts appear therefrom: The merchandise was released from custom's custody and delivered to the importer from the wharf on June 6, 1955, with an endorsement on the consumption entry permit that it was to be examined by the Food and Drug Administration at destination.

Five carloads were refused admission by the Food and Drug Administration, as the peanuts were contaminated by insects. These five carloads were exported to Canada under customs supervision and are not involved herein.

The remaining 11 carloads were cleaned under the supervision of the Food and Drug Administration, resulting in 601,151 pounds of clean peanuts, which were released to the importer; 30,544 pounds of contaminated peanuts, which were exported to Canada under customs supervision; and 31,167 pounds of chaff, hearts, and sweepings. The latter were not admissible into the United States as peanuts. Accordingly, an application was made to the Food and Drug Administration to render them unsuitable for human consumption by adding fish oil thereto. This was done under supervision of the Food

and Drug Administration, and the denatured chaff, hearts, and sweepings were released for sale to the Farmers & Merchants Milling Co., Glencoe, Minn.

The weigher's report gives the total weight of the shipment as 941,763 pounds. A total quantity of 308,044 pounds was exported under customs supervision and duty was refunded. Duty was assessed on the total quantity not exported, 633,719 pounds. Of this quantity, as stated above, 601,151 pounds were permitted entry as peanuts; 31,167 pounds of chaff, hearts, and sweepings were released after being rendered unfit for human consumption; and a quantity of 1,401 pounds was apparently lost in the cleaning operations. No claim is made as to this quantity.

The pertinent provisions of the Tariff Act of 1930, and said act, as amended, are as follows:

PAR. 759. Peanuts, not shelled, 4¼ cents per pound; shelled, 7 cents per pound; * * *.

PAR. 761. Edible nuts, not specially provided for, * * * *Provided*, That no allowance shall be made for dirt or other impurities in nuts of any kind, shelled or unshelled, and that a mixture of two or more kinds of nuts shall bear the highest rate of duty applicable to any of the components.

SEC. 507. TARE AND DRAFT.

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.

SEC. 508. COMMINGLING OF GOODS. [Section 19, Customs Simplification Act of 1953.]

(a) Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise cannot be readily ascertained by the customs officers * * * and if the consignee or his agent shall not segregate the merchandise pursuant to subsection (b), then the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof.

(b) Every segregation of mechandise [*sic*] made pursuant to this section shall be accomplished by the consignee or his agent at the risk and expense of the consignee within thirty days after the date of personal delivery or mailing, by such employee as the Secretary of the Treasury shall designate, of written notice to the consignee that the merchandise is commingled, unless the Secretary authorizes in writing a longer time. Every such segregation shall be accomplished under customs supervision, and the compensation and expenses of the supervising customs officers shall be reimbursed to the Government by the consignee under such regulations as the Secretary of the Treasury may prescribe.

Section 507, *supra*, contemplates that there may exist impurities in imported merchandise, but that their presence shall not affect the

duties to be levied on the merchandise, unless the impurities are of such character or in an amount not usually found in such or similar merchandise. *Cargill Grain Co., Inc.* v. *United States*, 30 C.C.P.A. (Customs) 78, 88, C.A.D. 219; *Socony Vacuum Oil Co., Inc.* v. *United States*, 44 C.C.P.A. (Customs) 83, 89, C.A.D. 641. The proviso in paragraph 761, *supra*, implies a legislative purpose that the presence of impurities with nuts shall not affect or control the duty which should be assessed upon them. *Spencer Importing & Trading Co.* v. *United States*, 2 Ct. Cust. Appls. 444, 449, T.D. 32201. Therefore, since the collector assessed duty upon the total unexported quantity of the merchandise under paragraph 759, *supra*, it is presumed that he found that the chaff, hearts, and sweepings were impurities found in the importations and subject to duty as peanuts.

Plaintiff claims, however, that the chaff, hearts, and sweepings are a distinct commodity which should have been appraised separately and assessed with duty as waste, rather than as peanuts.

Thus, the first question before the court is whether the material separated from the good peanuts in the cleaning process consists of impurities or is some other distinct commodity.

In order to answer this question, it is pertinent to examine the principles laid down by the courts in cases involving impurities and commingled merchandise.

Under R.S. 2898, the predecessor of section 507, *supra*, it was held that the ordinary impurities of merchandise do not constitute tare, but that extraordinary impurities, such as are not commonly present in the merchandise as bought and sold in trade and commerce, are the subject of allowance. *Seeberger* v. *Wright and Lawther Oil & Lead Manufacturing Company*, 157 U.S. 183; *Shallus* v. *United States*, 1 Ct. Cust. Appls. 316, T.D. 31408; *United States* v. *Baker Castor Oil Co.*, 2 Ct. Cust. Appls. 338, T.D. 32076. The reason for this rule was brought out in *United States* v. *Reid, Murdoch & Co.*, 120 Fed. 242, namely, that where Congress placed a duty upon a commodity, it meant it to apply to the article of commerce, not the article after purification.

In *Spencer & Co.* v. *United States*, 143 Fed. 916, T.D. 26974, affirming 9 Treas. Dec. 310, T.D. 26090, no allowance was granted for impurities, consisting of dirt and broken pieces of shell, found in certain shelled nuts. This material constituted from 3 to 6 per centum of the respective consignments. The court said:

* * * The testimony before the appraisers and here, as I read it, all tends to show that the nuts of commerce did not contain as much waste and dirt prior to the present act as they do now, but the trade has at all times called them shelled nuts. * * * When the present act was passed the shelled nuts of commerce had some impurities, and it is difficult to understand the reason for asking an allowance now, when the percentage of waste has increased from perhaps 1 per cent

to perhaps 3 per cent. It is even more difficult to discover why the entire percentage of impurity should be allowed, because that would leave the nuts paid for somewhat cleaner and purer than the shelled nuts of commerce, which Congress had in mind.

See also *Spencer Importing & Trading Co.* v. *United States, supra,* holding that no allowance could be made for dirt and shells in an importation of shelled almonds.

In *Wood & Selick* v. *United States,* 4 Ct. Cust. Appls. 228, T.D. 33439, it was held that no allowance could be made for sand, stems, and stalks amounting to 5 to 7 per centum in shipments of raisins, since that was the ordinary amount of impurities found in such merchandise.

Nevertheless, where the commingled material in fact consists of two or more commodities, and not impurities, it may be segregated and duty assessed at the rates applicable to each component. *Consolidated Elevator Co.* v. *United States,* 8 Ct. Cust. Appls. 267, T.D. 37536; *United States* v. *Amendola,* 5 Ct. Cust. Appls. 516, T.D. 35156; *J. M. McCulloughs Sons Co.* v. *United States,* 65 Treas. Dec. 595, T.D. 46985.

The merchandise involved in the *Consolidated Elevator Co.* case consisted of flaxseed and percentages of wild buckwheat, wild mustard, wheat, barley, oats, chaff, and foxtail. The collector treated the latter as impurities in the flaxseed. The court noted that these substances were, according to regular commercial practice, separated from the flaxseed, making a commercial product known as screenings, and held them dutiable as an unenumerated unmanufactured article. It stated that the proviso to the flaxseed paragraph denying any allowance for dirt or impurities, did not abrogate the rule that where two or more articles subject to different tariff rates are present in an importation, they may be separately assesssed at the several rates provided for each. The court further stated (p. 273) :

* * * A commodity which has a value such as have the screenings in question here can hardly appropriately be said to be an impurity. It is not the major commodity in value appearing in the importation, but it is a thing of substantial value, and as such subject to tariff duty. It is quite a different thing than something that has no such value and is destroyed.

In *United States* v. *Amendola, supra,* the merchandise consisted of Italian pine cones with nuts attached. It was held that the nuts were dutiable under the *eo nomine* provision for nuts and that the cones were entitled to free entry. The court stated that the cones were not "dirt" nor did they respond to the description of "other impurities in" the nuts which they held and carried.

*J. M. McCulloughs Sons Co.* v. *United States, supra,* involved an importation of white clover seed with which was commingled a quantity of alsike clover seed. There was evidence that alsike seed is invariably found in or mixed with white clover seed and the court held that,

since the percentages of each had been agreed to, they should be segregated for duty purposes as provided in section 508 of the Tariff Act of 1930 and duty assessed accordingly.

A different result was reached in *I. C. Harris v. United States*, 71 Treas. Dec. 678, T.D. 48936, where the merchandise consisted of aluminum borings, containing 58.6 per centum aluminum, less than 4 per centum copper, and 41.4 per centum dirt, oil, moisture, and other refuse. The court held that section 508 applied only where there were two different kinds of merchandise and that moisture, dirt, and other refuse did not constitute merchandise, nor did the negligible amount of copper found in the aluminum bring the importation within the terms of the section. It was further held that the importer was not entitled to an allowance under section 507, since it had not been shown that the dirt, oil, and other refuse were not ordinarily present in importations of aluminum borings.

In *Pacific Vegetable Oil Corp. v. United States*, 15 Cust. Ct. 161, C.D. 964, it was held that plaintiff was not entitled to segregation of merchandise, consisting of sesame seed, dirt, chaff, and foreign seeds, on the theory that the impurities were screenings. Citing *Consolidated Elevator Co. v. United States, supra*, the court stated (p. 164) :

* * * The court there construed the tariff term "screenings" as a commercial product having a distinct value and a particular use and it confined the term "impurity" to such as had no value and was destroyed. Clearly the tariff meaning of the term "screenings" does not embrace all that is removed from a commodity by a screening process, as that term was defined by the witnesses herein. In view of the foregoing decision, refuse, consisting of seven-hundredths of 1 per centum of foreign seeds, a negligible quantity, and 4.89 per centum of dirt and chaff would not be considered a commercial product, nor is there any evidence before us that the instant refuse was so used.

In *Peppard Seed Company v. United States*, 29 Cust. Ct. 307, C.D. 1484, it was held that merchandise which was not admissible under the Federal Seed Act without cleaning or processing, which resulted in a separation of the merchandise into two or more commodities, was segregable under the provisions of section 508 of the Tariff Act of 1930. The merchandise, in that case, consisted of unthreshed Kentucky bluegrass seed. The importer requested segregation and had the merchandise cleaned. From that process, there was obtained a portion of merchandise, which was permitted entry as seed; a portion, consisting of bluegrass stems, which was destroyed under supervision of the Department of Agriculture; and a portion consisting of chaff, broken-up leaves, bluegrass stems, refuse, hay, and straw, which was sent to the city dump. It was contended that the latter portion was not dutiable under paragraph 763 as seed but was classifiable under some other paragraph of the tariff act. The court stated (pp. 312–313) :

\* \* \* Obviously such material is not bluegrass seed. However, as imported, it was mixed with bluegrass seed and paragraph 763 provides that "no allowance shall be made for dirt or other impurities in seed of any kind." It is clear that part, at least, of this material consisted of dirt and impurities. There is nothing to show how much of the material was dirt and impurities and how much, if any, was something else. Presumably, the collector found that the material was entirely dirt and impurities and, therefore, classifiable with the seed itself under paragraph 763, as amended.

\*         \*         \*         \*         \*         \*         \*

In the instant case, plaintiff has not established what part of the material consisted of dirt and impurities for which no allowance could be made and which was properly classifiable under paragraph 763, as amended, and what part, if any, consisted of material, which, if destroyed under Government supervision, could be considered a nonimportation. It follows that the presumption of correctness attaching to the collector's classification has not been overcome.

It is evident, from these cases, that merchandise consisting of a particular commodity and other material may be segregated and the components subjected to different rates of duty, only where the material is, in fact, not impurities, but something else.

In the instant case, it is apparent that the chaff and sweepings were not peanuts, although the hearts may have been. Whether these substances constituted something other than impurities is not clearly established. Sweepings are generally considered to be refuse, and chaff is, at least sometimes, deemed to be an impurity. Presumably, hearts are broken pieces of peanuts. If so, they are properly classifiable as peanuts, even if damaged. *H. A. Johnson Co.* v. *United States*, 21 Cust. Ct. 56, C.D. 1127. The chaff, hearts, and sweepings involved herein amounted to about 5 per centum of the importation, but there is nothing in the record to show the character or the quantity of impurities usually found in Indian shelled groundnuts. In *Spencer & Co.* v. *United States*, *supra*, the impurities in shelled nuts consisted of dirt and broken pieces of shell, amounting to from 3 to 6 per centum of the respective consignments. There is nothing in the record to indicate that the material separated from the peanuts constituted a recognized commercial commodity, such as the screenings in *Consolidated Elevator Co.* v. *United States*, *supra*. The fact that material in this case may have been sold, after the addition of fish oil, does not establish that, in its condition as imported, it was such a commodity. In view of section 507, *supra*, and paragraph 761, *supra*, it seems clear that it was not the intention of Congress to allow material commingled with nuts to be entered as a separate commodity, unless it is shown that it is a distinct commercial product. If the material is, in fact, impurities, it cannot be classified as waste or as any other tariff entity.

For the reasons stated, we hold that the plaintiff has failed to present evidence sufficient to overcome the presumption of correctness attaching to the collector's classification of this merchandise as pea-

nuts, including impurities for which no allowance can be made. Since the record does not establish that the merchandise was, in fact, composed of separate commodities subject to different rates of duty, section 508 does not apply. *United States* v. *F. W. Myers & Co., Inc.,* 45 C.C.P.A. (Customs) 48, 53, C.A.D. 671. The collector's liquidation is valid, and the protest is overruled. Judgment will be rendered accordingly.

DISSENTING OPINION

DONLON, Judge: This case was before me initially for preparation of the prevailing opinion. Differences between my colleagues and myself, as to the law that is applicable to the facts here of record, have resulted in return of the case to me for preparation of an opinion expressing my dissenting views.

The first issue for decision is whether there have been shown to be two tariff entities which, in the merchandise as imported, were commingled, but which were capable of segregation and which, in fact, were segregated into such separate tariff entities prior to liquidation.

If the answer to that question is yes, then the second issue is whether the appraisement as an entirety was void, as plaintiff contends, for failure to appraise the two entities separately.

The protest, as amended, presents both these issues.

Cases discussed in the majority opinion, in which the issue litigated and decided was whether an importer claiming allowance under section 507 of the Tariff Act of 1930 is entitled to such allowance for tare or other impurities, are not relevant to this decision. Plaintiff has made no claim for allowance under section 507. That issue is not before us. That there were impurities in the merchandise, as imported, is clear beyond shadow of a doubt; but since plaintiff makes no claim for any allowance therefor, it is idle to speculate whether the impurities were or were not excessive. Plaintiff had no burden of proof in that respect.

What plaintiff claims is that merchandise, commingled at the time of importation but which before liquidation had been segregated into two different tariff entities, for each of which Congress has provided a separate duty rate, should be classified as such separate entities for duty purposes and liquidated at the rates appropriate to each such classification. This is a claim under section 508.

The distinction, in the case of "impurities," between the two statutory provisions (now sections 507 and 508) was pointed out, as to the related provisions of an earlier act, by our appeals court in *Consolidated Elevator Co.* v. *United States,* 8 Ct. Cust. Appls. 267, T.D. 37536. The Board of General Appraisers, in that case, had overruled the protest claim for segregation of "screenings" from flaxseed,

as the basis for establishing two separate tariff classifications for merchandise that had been commingled at the time of importation. The board's decision included a finding that "screenings" are impurities, for which Congress has said "allowance" may not be made. Reversing the decision of the board, our appeals court said, as to that issue:

* * * we think it may well be said that the importers are not here seeking an allowance. The word "allowance" has come to mean either an allowance for draft or tare or some abatement from the full weight of imported merchandise. *That is not what is being sought here.* Potential separation of the two commodities mingled together of necessity for the purpose of importation is all that is asked, and this is for the purpose of enabling the importer to pay a tariff upon each of the commodities *which in use will have a separate existence.* [*Consolidated Elevator Co., supra,* at page 273; emphasis added.]

As to what Congress means by the word "impurity," our appeals court said, in the *Consolidated Elevator* case:

It would appear that the word "impurity" as used in this tariff act is open to two constructions. It may and often does mean any matter not of the character of the principal matter. It may be given a narrower meaning, as signifying some substance inherently impure or unsalable.

This precise question has not before engaged our attention. The question of allowance for wantage or deductions from full weight on account of impurities has been considered in various cases in this court, which cases have dealt with importations as to which allowance was claimed on account of the presence of nondutiable extraneous matter. * * * Undoubtedly such a provision as that we are considering would require denial of any allowance whatever for impurities, which, within the rule of ejusdem generis, were of like kind with those specially enumerated. We are impressed, however, that this rule calls for a limitation of the impurities, allowance for which is proscribed, to such as correspond with the one named, at least *in the essential particular of having no separate tariff status for dutiable purposes,* and that the proviso should not be so construed as to abrogate the rule that *where two or more articles subject to different tariff rates are present in an importation they may be separately assessed at the several rates provided for each,* * * *. [Pages 269, 270; emphasis added.]

There have been decisions in which claims made for separate classification, pursuant to section 508, were overruled either because commingling of the imported merchandise was permanent and segregation, therefore, impossible; or because, in fact, no segregation was ever made. These authorities are not pertinent here, since the record before us shows that there actually was segregation into different classifications, including 601,151 pounds of peanuts admissible as such; 30,544 pounds of peanuts rejected as contaminated and denied admission; and the segregated lot of 31,167 pounds described, not as peanuts, but as chaff, hearts, and sweepings, which were not admissible as peanuts but which the Government caused to be made unsuitable for human consumption as a condition of admission, and which were admitted and sold commercially as such, to be used for animal feed.

Hence, segregation here not only was possible; there actually was segregation into merchandise which was sold commercially as different goods and for different uses.

Cases construing section 508, or comparable earlier tariff provisions involving segregation, include the following, which are cited in the opinion of the majority:

*Consolidated Elevator, supra.*

*United States* v. *Amendola,* 5 Ct. Cust. Appls. 516, T.D. 35156.

*J. M. McCulloughs Sons Co.* v. *United States,* 65 Treas. Dec. 595, T.D. 46985.

*I. C. Harris* v. *United States,* 71 Treas. Dec. 678, T.D. 48936.

*Pacific Vegetable Oil Corp.* v. *United States,* 15 Cust. Ct. 161, C.D. 964.

*Peppard Seed Company* v. *United States,* 29 Cust. Ct. 307, C.D. 1485.

In the *Consolidated Elevator, Amendola, McCulloughs Sons,* and *Peppard Seed* cases, the protest claims for separate duty classification were sustained. In the *I. C. Harris* and *Pacific Vegetable Oil* cases, the like claims were overruled. It does not appear that this difference in result is related to a change in the views either of this court or of our appeals court as to the congressional intent in enacting section 508 or in the scope of its applicability. Rather, the overruling of certain claims to separate classification rested, in the *I. C. Harris* and *Pacific Vegetable Oil* cases, on the facts in those cases.

In both those cases, the holding was that there were not, in fact, two commercial entities each having a distinct value and particular use; and since it was found that there were not two separate but commingled commercial entities in the imported merchandise, it was rightly held that no case had been made for application of the segregation relief which Congress intended in section 508.

In the other cases, *supra,* the holding was that there were, in fact, two commercial entities and, hence, relief under section 508 (or its predecessor sections) was proper.

The record here shows that, after segregation, 601,151 pounds of the imported merchandise were sold as peanuts, and duty has been levied on them as such. Plaintiff accepts that action as correct. The record also shows that 31,167 pounds were admitted for sale for animal feed, and were described by the Government as chaff, hearts, and sweepings, but not as peanuts. These, too, were subjected to the duty rate on peanuts. Plaintiff claims error in that classification, contending that these 31,167 pounds were not the commercial, or tariff entity, known as peanuts; but they were, in fact, the tariff entity known as waste, and were actually sold as such.

In my view, the record before us supports this claim, under the statute and precedents. There is shown such a difference in commer-

cial use as our appeals court made the *rationale* of its decision in the *Consolidated Elevator* case, *supra*.

This being so, appraisement of the merchandise as an entirety was erroneous. Congress has provided the procedure appropriate in such a case. Under section 2636 (28 U.S.C. § 2636) the remedy provided is reference to a single judge for separate appraisement of the two tariff entities.

Order should issue declaring the appraisement of this merchandise as an entirety null and void and remanding the case to a single judge, sitting in reappraisement, to determine the separate values of the respective tariff entities.